UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARAH SMITH, o/b/o S.N.S.,

      Plaintiff,

v.                                   CASE No. 8:13-CV-2531-T-TGW

CAROLYN COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of her daughter.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence, and does not contain reversible error, the decision will be affirmed.

I.

      S.N.S. was born on September 29, 2010, and was about one and one-half years old and considered an older infant at the time of the administrative decision (Tr. 14, 21, 301).  On November 5, 2010, the plaintiff,

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 22).

who is the child's mother, filed a claim for supplemental security income on behalf of the child. She alleges that her daughter is disabled due to sickle cell anemia (Tr. 113). The claim was denied initially and upon reconsideration.

The child's mother, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that the child suffers from the severe impairment of sickle cell disease (Tr. 14). The law judge concluded that the child did not have an impairment that "meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (id.). The law judge also found that "[t]he claimant does not have an impairment or combination of impairments that functionally equals the listings" (id.). The law judge, therefore, determined that the child was not disabled (Tr. 21).

The plaintiff sought review by, and submitted additional evidence to, the Appeals Council (see Tr. 1, 4). The Appeals Council stated that it "considered the reasons you disagree with the decision and the additional evidence .... [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. 2).

Accordingly, the Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

II.

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits. As amended, the Act now provides (42 U.S.C. 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the

-3-

second step asks whether the child has a severe impairment. 20 C.F.R. 416.924(c). If she does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then she is deemed disabled. 20 C.F.R. 416.924(d)(1). If she does not, then she will be found not disabled. 20 C.F.R. 416.924(d)(2).

When determining functional equivalence, a child's limitations in the following six domains of functioning are evaluated: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1). An impairment functionally equals a listed impairment if the plaintiff shows that the child has an extreme limitation in one, or a marked limitation in two, of the six domains of functioning. 20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability independently to initiate, sustain, or complete activities. 20 C.F.R.

416.926a(e)(2)(i). It means a limitation that is more than moderate, but less than extreme. Id. An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability independently to initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

In October 2010, approximately one month after her birth, the plaintiff's daughter was diagnosed with sickle cell anemia (Tr. 164).[2]  The

---

[2]"Sickle cell anemia is an inherited condition in which there is a deficiency of healthy red blood cells." <u>See</u> mayoclinic.org/diseases-conditions/sickle-cell-anemia. "With early detection and comprehensive medical care, most people with sickle cell disease are in fairly good health most of the time." <u>Flenov</u> v. <u>Colvin</u>, 2014 WL 2821932 at *2 (E.D. Ark. 2014), <u>quoting</u> Monique Laberge, 5 <u>The Gale Encyclopedia of Med.</u> 3976 (4th Ed.).

law judge found that sickle cell anemia was a severe impairment, but that the illness was not disabling (Tr. 14, 20, 21). The plaintiff challenges the decision on three grounds (Doc. 19), none of which is meritorious.

A. The plaintiff argues first that the law judge "failed to properly evaluate whether [her daughter] meets the listing for sickle cell disease" (id., p. 7). A child meets this listing when she has sickle cell disease with:

> A. Recent, recurrent severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal); or
>
> B. A major visceral complication in the 12 months prior to application; or
>
> C. A hyperhemolytic or aplastic crisis within 12 months prior to the application; or
>
> D. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or
>
> E. Congestive heart failure, cerebrovascular damage, or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 107.05. The law judge determined that the child did not have an impairment that meets, or medically equals, the severity of one of the listed impairments (Tr. 14). In this regard, the law judge stated (id.):

> The claimant's sickle cell disease does not meet or equal the criteria of listing 107.05, as she has not experienced any of the following: recent, recurrent severe vaso-occlusive crises, a major visceral complication in the 12 months prior to application, a hyperhemolytic or aplastic crisis within 12 months prior to application, chronic, severe anemia with persistence of hematocrit of 26 percent or less, or congestive heart failure, cerebrovascular disorder or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff.

(See Tr. 16, 21 citing Exs. 9F, 10F, 12F). Notably, no treating or examining physician has opined that the child meets, or medically equals, the criteria of listing 107.05. Additionally, two nonexamining reviewing physicians, Dr. Lionel Henry and Dr. William Prather, concluded that the child does not meet, or medically equal, the criteria (see Tr. 206, 214). The law judge gave great weight to Dr. Prather's opinion (Tr. 16).

Moreover, the law judge noted that, despite the child's illness, examining physicians regularly commented that the child appeared well, was alert and interactive, and exhibited normal growth and development (Tr. 16, 21; see, e.g., Tr. 301, 302, 319, 320, 389, 391, 469). The law judge therefore gave an adequate explanation, supported by substantial evidence, for finding that the child did not meet, or medically equal, an Appendix 1 listing (Tr. 14).

The plaintiff has failed to show that the evidence compels the contrary finding.  See Adefemi v. Ashcroft, supra (findings of fact made by administrative agencies may be reversed only when the record compels a reversal).   Importantly, "[w]hen a claimant contends that [s]he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency." Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In this case, the plaintiff has not even specified which criterion of the sickle cell listing that the child allegedly satisfied (see Doc. 19, pp. 7-9). Based on her argument, the plaintiff apparently contends that her daughter met subsections A and D (see id.).  In this connection, the plaintiff states that the child had six multi-day hospitalizations between April 2011 and April 2012, and that, on three occasions in 2011, she had a hematocrit level under

26 percent (id., pp. 8-9). However, the plaintiff makes no cogent argument, and it is not apparent on its face, how this evidence meets a listing.

Thus, although the plaintiff identifies three instances in 2011 when the child's hematocrit level fell below 26 percent (one of which was just barely below that level at 25.8 percent, and the two others were not much lower at 24.2 percent and 22.9 percent), the plaintiff makes no argument how these rare instances – three readings in more than one and one-half years – meet § 107.05D's requirement of "chronic, severe anemia" with "persistence of hematocrit of 26 percent or less." As the Commissioner pointed out, there were far more hematocrit levels that were above 26 percent (see Doc. 20, p. 7). Notably, the child's treating hematologist characterized the child as having only "mild-to-moderate anemia" (Tr. 203). Therefore, the plaintiff has failed to show that the child's illness satisfied § 107.05D.

With regard to § 107.05A, the plaintiff does not identify the requisite evidence of "[r]ecent, recurrent severe vaso-occlusive crises" involving the musculoskeletal, vertebral, or abdominal system. In this connection, the plaintiff focuses on the child's hospitalizations, and attempts to equate the hospitalizations with vaso-occlusive crises (Doc. 19, p. 9).

However, the child's hospitalizations and a vaso-occlusive crisis are not, as the plaintiff argues, "one and the same" (id.).

> Thus, vaso-occlusive crises are:
>
>> painful episode[s] in the life of a person affected with sickle cell anemia. [They] occur[ ] when the sickle cells (red blood cells) form masses that obstruct the flow of blood to various parts of the body. The limbs and joints are the most commonly affected parts, but the central nervous system, the lungs, and the abdomen may also be involved.

Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1277-78 (11th Cir. 2004), quoting 6 J.E. Schmidt, Attorney's Dictionary of Medicine and Word Finder V–40 (2002). Further, in order to meet listing 107.05A, the crises must be "[r]ecent, recurrent [and] severe."

In this regard, the plaintiff asserts in a conclusory manner that the child was hospitalized "for severe pain and high fever due to sickle cell from vaso-occlusive crisis" (Doc. 19, p. 9). The plaintiff's general assertions regarding evidence in the record, and without any specific citation to the evidence, are insufficient to meet her burden to show the child met a listing. See Wilkinson o/b/o Wilkinson v. Bowen, supra. Furthermore, she does not comply with the Scheduling Order and Memorandum Requirements that each

-11-

argument be "supported by citations to the record of the pertinent facts" (Doc. 15, p. 2). Therefore, this argument is subject to being forfeited on this basis alone.

Furthermore, the plaintiff's conclusory allegations of recurrent debilitating illness are not substantiated by the record. Thus, the plaintiff argues that the child experienced "severe pain" on "nearly every occasion she has been hospitalized" (Doc. 19, p. 9). However, as the law judge emphasized, hospital treatment notes regularly described the child as being in no acute distress and interactive, vigorous, alert, and playful (Tr. 21; see, e.g., Tr. 222-23 (child in no acute distress, "has not been exhibiting symptoms consistent with vasoocclusive pain crisis"); Tr. 246 ("awake and playful in no acute distress" and has not had a pain crisis as of June 2011); Tr. 255 ("robust alert baby in no acute distress"); Tr. 268 ("alert, interactive and in no acute distress"); Tr. 452 ("happy, alert, playful, moving all extremities well"); Tr. 469 ("alert, in no acute distress. She is not irritable. She is certainly nontoxic appearing")).

Furthermore, the child's hospitalizations were generally for fevers and upper respiratory ailments that did not involve the

musculoskeletal, vertebral, or abdominal system (see, e.g., Tr. 223, 235, 268, 283, 436, 495, 497).[3] Notably, the plaintiff does not identify any authority establishing that the presence of fever, without pain or abnormalities involving the musculoskeletal, vertebral, or abdominal system, qualifies as a vaso-occlusive crisis. See Shinn ex rel. Shinn v. Commissioner of Social Security, supra, 391 F.3d at 1277-78 (noting that a vaso-occlusive crisis is "painful" and involves the obstruction of blood flow to various parts of the body); see also Tr. 246 (physician noting in June 2011 that the child "had 2 prior hospitalizations for fever. She has never had a pain crisis").

In sum, the plaintiff has clearly failed to meet her burden to establish that her daughter met either subsection A or D of Listing 107.05. Wilkinson o/b/o Wilkinson v. Bowen, supra; Adefemi v. Ashcroft, supra.

The plaintiff also argues that the law judge's explanation for finding that her daughter did not meet the sickle cell disease listing was insufficient. This contention is meritless.

---

[3]The records before the law judge showed that the child was treated once during the relevant period for a vaso-occlusive crisis (see Tr. 526-27). In this regard, it was noted that the plaintiff believed that the child was possibly in pain (see id.).

The plaintiff contends that the law judge erred because he did not specify in the decision the child's hematocrit levels (Doc. 19, p. 9). However, the law judge was clearly aware of the child's hematocrit levels, as he accurately summarized in the decision the medical records and cited to the exhibits containing that information (see Tr. 16, 21). Furthermore, the law judge specifically found that the child did not have "severe anemia with persistence of hematocrit of 26 percent or less" (Tr. 14). That finding, as discussed supra, pp. 9-10, is supported by substantial evidence. The plaintiff does not identify any legal authority requiring the law judge to specify in the decision the child's hematocrit levels, especially considering there were so few that were at or below 26 percent. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

The plaintiff also argues, baselessly, that the law judge failed to explain the medical basis for finding that the child's hospitalizations were not vaso-occlusive crises (Doc. 19, p. 9). As indicated, the law judge noted that the child's hospitalizations were generally for fevers and upper respiratory infections (some of which were prophylactic) during which the child was

"repeatedly described as vigorous, alert, playful, and in no acute distress" (Tr. 21). These circumstances, which are inapposite to a vaso-occlusive crisis, <u>see</u> <u>Shinn ex rel. Shinn</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, (noting that a vaso-occlusive crisis is "painful" and involves the obstruction of blood flow to various parts of the body), cogently explain the law judge's finding that the child did not experience "recent, recurrent severe vaso-occlusive crises" (Tr. 14). <u>See</u> Listing 107.05A.

Moreover, as indicated, it is the plaintiff's burden when contending that the child meets listing 107.05A to demonstrate that the child had "recent, recurrent severe vaso-occlusive crises." Not only has the plaintiff failed to make such a showing, she has not even meaningfully attempted to do so.

B. The plaintiff argues, alternatively, that the law judge should have found the child was disabled due to "an extreme impairment in the domain of physical health and well-being," which the plaintiff notes would functionally equal the listing (Doc. 19, p. 10). The law judge considered the six domains of functioning, and found that the child had no limitations in any

domain except for a "marked" limitation in the domain of health and physical well-being (Tr. 16-21).[4]

In the domain of "health and physical well-being," a child has a marked limitation if she is frequently ill because of her impairment or has frequent exacerbations of her impairment that result in significant, documented symptoms or signs. 20 C.F.R. 416.926a(e)(2)(iv). In this domain, "frequent" is defined as (id.):

> episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks ... if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

A child is considered to have an "extreme" limitation if she has symptoms or signs "substantially in excess" of the requirements for a marked limitation in this domain. 20 C.F.R. 416.926a(e)(3)(iv). Significantly, the regulation states further that, "if you have episodes of illness or exacerbations of your

---

[4]The law judge noted that this is "the only domain the plaintiff's attorney appears to assert the existence of a severe limitation. Exhibit 14E/4" (Tr. 20 n. 1).

impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases." Id.

As discussed supra, pp. 7-15, the law judge found that the child's sickle cell disease did not meet, or medically equal, listing 107.05, and the plaintiff did not show that the evidence compelled a contrary conclusion. Furthermore, with respect to the issue of functional equivalence, the law judge gave a cogent explanation for finding that the plaintiff had a marked, but not an extreme, limitation in the domain of health and well-being. In this regard, the law judge stated (Tr. 20-21) (footnote omitted):

> The claimant was initially diagnosed with sickle cell disease at birth, and subsequent testing has confirmed this diagnosis. Exhibit 2F and Exhibit 4F. The claimant has been hospitalized on a number of occasions for fevers and upper respiratory symptoms, generally without evidence of vaso-occlusive crises. Exhibit 9F, Exhibit 10F, and Exhibit 12F. In general, however, physical examination findings have been normal, and the claimant has been characterized as having normal growth and development and a normal energy level, and is repeatedly described as being active, interactive, vigorous, alert, playful, and in no acute distress. Exhibits 10F, 12F, 13F. At the hearing,

the claimant's mother indicated that normal
developmental milestones have been met.

This explanation is adequate, and it is supported by substantial evidence.

Thus, as the Commissioner notes (Doc. 20, p. 9), the plaintiff was admitted

to the hospital seven times during the relevant time period, none of which

were for a duration of two weeks, and most were for less than seven days.

Furthermore, as discussed supra, pp. 9-13, the hospitalizations typically

involved fevers or upper respiratory symptoms without evidence of severe

pain or a vaso-occlusive crisis, so that the severity of the illness was not

comparable to listing level.[5] See 20 C.F.R. 416.926a(e)(3)(iv).

Underscoring the conclusion that the child did not have an

"extreme" limitation, which by definition interferes "very seriously" with the

child's functioning, 20 C.F.R. 416.926a(e)(3)(i), are the findings of

examining physicians that the child exhibited normal growth and

development and that she is an interactive, playful, robust child who had "no

major problems" from sickle cell disease (Tr. 319, 320, 382, 389, 391, 469).

Further, the child's regular treatment consisted only of a daily dose of an

---

[5]Furthermore, as the law judge noted in the decision, plaintiff's counsel stated that
some of the hospitalizations were merely prophylactic measures (Tr. 21, n.2; see Tr. 158).

antibiotic and wellness visits every three months (see Tr. 392).[6] Significantly, moreover, the child's physician opined when she was 13 months old that her circumstances "predict generally a milder course of the disease" (Tr. 390).

The plaintiff, additionally, has not identified evidence that compelled the law judge to find an extreme limitation in the domain of physical health and well-being. See Adefemi v. Ashcroft, supra. In this regard, the plaintiff asserts that the child "is constantly ill," and reiterates that she has been hospitalized many times (Doc. 19, p. 11).

However, the plaintiff's statement that the child has been hospitalized 10 to 12 times is inaccurate because those figures improperly include evidence that was not before the law judge, and hospitalizations that occurred after the law judge's decision in June 2012 (see Exs. 14F, 15F). See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1988), cert. denied, 525 U.S. 1124 (1999) (only the evidence that was before the law judge is to be considered in reviewing the law judge's decision); Watson v. Commissioner of Social Security, __ Fed. Appx. __, 2015 WL 163042, n.1 (11th Cir.)

---

[6]Notably, despite the child's repeated respiratory problems, the plaintiff smoked cigarettes, which the physician advised her to stop so the child would not be exposed to secondhand smoke (Tr. 390).

("[W]e will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."); <u>Wilson</u> v. <u>Apfel</u>, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision.").

Furthermore, in determining the degree of the child's limitation in this domain, the law judge considered not only the number of hospitalizations, but their severity and duration.   <u>See</u> 20 C.F.R. 416.926a(e)(2)(iv) (noting that there must be "significant, documented symptoms or signs," and that each illness last two weeks or more, or its equivalent in severity). Here, the plaintiff has not cited to any hospitalizations or illnesses lasting two weeks or more; rather, most hospitalizations have been a few days.   Moreover, as discussed <u>supra</u>, the plaintiff has not shown that the hospitalizations were for symptoms and limitations of the severity contemplated by an "extreme" limitation. <u>See</u> 20 C.F.R. 416.926a(e)(3)(i) (an

extreme limitation interferes "very seriously" with the child's functioning).[7]

Therefore, the plaintiff has also clearly failed to identify evidence that the child was extremely limited in the domain of physical health and well-being.

The plaintiff additionally argues that the law judge's evaluation of the child's physical health and well-being domain was inadequate. In this regard, the plaintiff argues that the law judge's only reason for finding the child had a marked, instead of an extreme, limitation in this domain is because "the hospitalizations have been largely for unrelated reasons" (Doc. 19, pp. 10-11). The plaintiff's characterization of the law judge's reasoning is incomplete and inaccurate. First, the law judge did not state that the child's illnesses were unrelated to her sickle cell disease (id.). Rather, the law judge stated that the child "has been repeatedly hospitalized for fevers and underlying sickle cell disease" (Tr. 16). Furthermore, contrary to the plaintiff's assertion (Doc. 19, pp. 10-11), the law judge gave several reasons

---

[7] The plaintiff focuses on the child's number of hospitalizations, but even from a mathematical perspective, the child's hospitalizations during the relevant period do not meet the "marked" equivalent of exacerbations that average three times annually for at least two weeks each, which would total 42 days of hospitalizations.   20 C.F.R. 416.926a(e)(2)(iv).  The plaintiff, furthermore, would have to show that the child's symptoms and limitations were "substantially in excess" of that equivalence in order to prove an extreme limitation in this domain. 20 C.F.R. 416.926a(e)(3)(iv).

for finding a marked limitation in this domain (see supra, pp. 17-18, quoting Tr. 20-21). Therefore, the contention that the law judge's reasoning is inadequate is meritless.

In addition, the plaintiff argues, vaguely, that the law judge "does not define his findings with a proper evaluation" of the definitions of marked and extreme (Doc. 19, pp. 11-12). This contention is forfeited because the plaintiff fails to develop this argument (see Doc. 15). Furthermore, the contention is meritless, as the law judge properly identified the standards governing the analysis of a child disability claim, including accurate definitions of marked and extreme limitations in the pertinent domain of health and physical well-being (Tr. 12, 14, 15). Moreover, as discussed supra, the law judge did not improperly apply those standards. In sum, the plaintiff has failed to show that the law judge erred by, or did not adequately explain the basis for, finding the child had a marked, instead of an extreme, limitation in the domain of physical health and well-being.

C. The plaintiff's final, and undeveloped, argument is that the Appeals Council "failed to properly evaluate the new evidence" (Doc. 19, pp. 12-13). As indicated, the plaintiff sought review by, and submitted additional

evidence to, the Appeals Council (see Tr. 4). This evidence consisted of medical records from All Children's Hospital, dated August 23, 2011, to October 15, 2012, and records from St. Joseph's Hospital, dated April 20, 2012, to October 21, 2012 (id.). Notably, a substantial portion of this evidence post-dated the law judge's decision.

In this regard, the Appeals Council stated (Tr. 2):

> [W]e considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's actions, findings or conclusion is contrary to the weight of the evidence. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Accordingly, the Appeals Council denied the request for review and let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

The plaintiff argues first that the "Appeals Council ... declined review of this matter without any indication of whether the new evidence had been reviewed" (Doc. 19, p. 12). This contention is frivolous because, as quoted above, the Appeals Council stated that it "considered ... the additional

evidence listed on the enclosed Order of Appeals Council," and specified the evidence that it reviewed (see Tr. 2, 4). Moreover, contrary to the plaintiff's contention (Doc. 19, p. 12), the Appeals Council is not required to give a further explanation. Mansfield v. Astrue, 395 Fed. Appx. 528, 530 (11th Cir. 2010); Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 743 (11th Cir. 2008); Burgin v. Commissioner of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. 2011).

Next, the plaintiff, citing to Falge v. Apfel, supra, 150 F.3d at 1320, argues that the Appeals Council erred by denying her request for review (Doc. 19, p. 12). The appropriate citation for this argument is Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007). Falge was distinguished in Ingram in circumstances, as here, where the Appeals Council denies review. 496 F.3d at 1265-66.

The regulations provide that the Appeals Council will review a case if, among other things, "[t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence." 20 C.F.R. 416.1470(a)(3). The regulations provide further (20 C.F.R. 416.1470(b)):

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.... It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

The Eleventh Circuit sought to clarify in Ingram the law concerning the nature and extent of judicial review of new evidence that was first presented to the Appeals Council. In my view, Ingram held that, when the Appeals Council considers new evidence and denies review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008).

The plaintiff, therefore, has to overcome four hurdles in order to prevail on an Ingram claim. Thus, she must show (1) that the evidence relates to the period on, or before, the date of the law judge's decision; (2) that the evidence is new; (3) that the evidence is material; and (4) that the Appeals Council erred in deciding that the law judge's findings were not contrary to

the weight of all the evidence.  The plaintiff has not even meaningfully addressed these hurdles, much less shown that she can overcome them.

Thus, the plaintiff did not even mention Ingram or the standard of review it articulated.  Furthermore, she does not identify in the argument the records she relies upon in contending that the Appeals Council's denial of review was erroneous (see Doc. 19, pp. 12-13).  As indicated, the Scheduling Order and Memorandum Requirements directed the plaintiff in her memorandum to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support those challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 15, p. 2).  Consequently, the failure to develop a claim by setting forth facts and a legal analysis under Ingram constitutes a forfeiture of that claim.

In any event, the contention is meritless.  Thus, as the Commissioner points out (Doc. 20, p. 11), the majority of the records submitted to the Appeals Council pertain to the child's treatment after the date of the law judge's decision and, therefore, are irrelevant to whether the child is disabled under this application for supplemental security income.  20

C.F.R. 416.1470(b) ("the Appeals Council shall consider the additional evidence only where it relates to the period on, or before, the date of the administrative law judge hearing decision").  Thus, the law judge's decision was dated June 6, 2012, and most of the records pertain to medical treatment in August 2012 through October 2012 (see Exhibits 14F, 15F).

Furthermore, the plaintiff has not asserted a cogent argument that the evidence is material in that there is a reasonable possibility that the new evidence would change the administrative result.  See Falge v. Apfel, supra, 150 F.3d at 1323. Thus, the plaintiff makes the conclusory assertion that "it is clear from this evidence that the sickle cell disease has continued to cause an extreme impairment in this child's life, as well as showing signs of worsening, not improvement" (Doc. 19, pp. 12-13).  Not only does this contention not distinguish the evidence generated after the law judge's decision that is irrelevant to this application, it does not acknowledge that those exhibits also contain evidence that do not support her contention that sickle cell disease caused extreme limitations in this case (see, e.g., Tr. 615-16).  Therefore, the request for a remand based on new evidence is rejected. Of course, if the plaintiff believes the child's condition has worsened since

the date of the law judge's decision, she may file a new application for supplemental security benefits.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 27 day of March, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE